IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KEVIN L. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:21-cv-00955 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| WOODBURY AUTO GROUP LLC | ) | |
| and KHATAB ALAZAWY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff Kevin L. Brown filed a pro se Amended Complaint against Defendants Woodbury Auto Group LLC and Khatab Alazawy concerning the alleged deceptive sale of a damaged used motor vehicle. (Doc. No. 9). The Court granted Plaintiff pauper status and must now determine if the Complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

### I. LEGAL STANDARD

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers and should be liberally construed. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). However, Plaintiff must comply with the Federal Rules of Civil Procedure and meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Brown v. Mastauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not

spelled out in his pleading."). Accordingly, on initial review, the Court applies the standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

Under Rule 12(b)(6), the Court views the Amended Complaint in the light most favorable to Plaintiff and takes all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). The Court then determines if Plaintiff's factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plausible claim pleads factual content that allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," and therefore it "must indicate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Because this obligation requires more than labels and conclusions, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Furthermore, a plaintiff may not rely on conclusory allegations, unwarranted factual inferences or "legal conclusion[s] couched as factual allegation[s]." *Id.*; *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## II. FACTUAL ALLEGATIONS

On October 22, 2021, Plaintiff and his elderly mother visited a used car lot operated by Defendant Woodbury Auto Group LLP. (Doc. No. 9). Defendant Alazawy, acting as a salesman, represented to Plaintiff that a 2015 Nissan Altima ("Subject Vehicle") was in excellent mechanical condition; did not have any damage; and had been traded-in by the prior owner for non-mechanical

2

reasons. (*Id*. at 1-2, 6-7, 12). Alazawy refused to provide Plaintiff with a report concerning the vehicle's mechanical history, but he confirmed that the vehicle was being sold with the thirty-day "dealer warranty" for "engine and transmission" that was advertised in bold letters on the Buyer's Guide window sticker. (*Id*. at 10-11, 15-16; Doc. No. 9-1 at 22). Based on Alazawy's representations that the Subject Vehicle was "fit for the road" and covered by the warranty, Plaintiff agreed to purchase the car for $9,000. (Doc. No. 9 at 7, 16).

After the bill of sale was executed, however, Alazawy ink-stamped "all vehicles sold as is" over Plaintiff's signature. (*Id*. at 16). Defendants refused to provide the Subject Vehicle's title until after the thirty-day warranty period expired. (*Id*. at 12). Upon receiving the title, Plaintiff discovered that the Subject Vehicle had been rendered "salvage" condition by "flood damage" in a hurricane-impacted area. (*Id*.) Within weeks, the Subject Vehicle developed significant transmission problems, but Defendants "refused to fix the car" and avoided Plaintiff's attempts to seek a resolution. (*Id*. at 10-15, 23).

Based on these circumstances, Plaintiff alleges that Defendants engaged in a deliberate scheme to "trick" him into buying a damaged vehicle by telling "lies" and concealing information despite being "clearly aware" of the Subject Vehicle's failing transmission and flood damage. (*Id*. at 1-2, 14, 33-34). Plaintiff also alleges that Defendants deliberately concealed that the Subject Vehicle was going to be sold without the advertised warranty. (*Id*. at 19). Plaintiff alleges that he would not have purchased the Subject Vehicle "had [he] known the true condition and history." (*Id*. at 14). Finally, Plaintiff alleges the Subject Vehicle's value has been impaired because (a) it is "unsafe to drive on the roads . . . of Tennessee" due to the damaged transmission, and (b) as a "salvage" vehicle, it is not "legally drivable" and cannot be registered for license plates or insured in Tennessee. (*Id*. at 14-16; 27 & n.17).

## III. ANALYSIS

The Amended Complaint brings federal claims under the Odometer Act, 49 U.S.C. § 32705, *et seq*.;[1] Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-2-101, *et seq*.; and Tennessee common law. The Court addresses each claim in turn.

### A. Odometer Act

The purpose of the Odometer Act ("OA") is to "prohibit tampering with motor vehicle odometers" and "provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." *Scherber v. Online Auctions, LLC*, No. 3:13-cv-530, 2014 WL 3908114, at *2 (N.D. Ohio July 3, 2014) (quoting 49 U.S.C. § 32701(b)). In addition to prohibiting odometer and mileage tampering, the OA lists requirements for altering or repairing an odometer and authorizes the Secretary of Transportation to prescribe regulations for vehicle mileage disclosures on transfer of vehicle ownership. *Id*. (citing 49 U.S.C. § 32703-5; 49 C.F.R. § 580.5). Accordingly, the OA does not authorize a general private right of action; Plaintiff must allege an "intent to defraud regarding the vehicle's mileage or odometer." *Id*. at *3-4 (citing *Paul's Auto World v. Boyd*, 881 F.2d 1077 (6th Cir. 1989) (requiring, in case under MVICSA, "specific intent to deceive a purchaser of the mileage on a car")).

The Amended Complaint does not allege that Defendants intended to misrepresent or otherwise defraud Plaintiff concerning the Subject Vehicle's mileage or odometer. (*See* Doc. No. 9 at 32-33). Plaintiff's allegation that an internet report suggested the odometer was altered on "[a]t least one vehicle [sold by Defendants]," (Doc. No. 9 at 27), does not contain sufficient factual matter to allow an inference that Defendants intended to defraud Plaintiff regarding the odometer

---

[1] Plaintiff refers to the Odometer Act by its former name, the Motor Vehicle Information and Cost Savings Act ("MVICSA"). (Doc. No. 9).

4

of the Subject Vehicle. Because Plaintiff fails to allege "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, the OA claim must be dismissed for failure to state a claim.

**B. MMWA and Tennessee Warranty Claims**

The Magnuson-Moss Warranty Act ("MMWA") creates a federal right of action for breaches of warranty arising from state substantive law. *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013); *Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625, 631 (S.D. Ohio 2020); *see also Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 938 (M.D. Tenn. 2010) (explaining that the MMWA "does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law"). "Thus, to recover under the [MMWA] . . . [P]laintiff[ ] must assert a viable state-law warranty claim." *Bearden*, 720 F. Supp. 2d at 938; *see also Kuns*, 543 F. App'x at 575 (explaining that the elements of an MMWA breach of warranty cause of action are coextensive with those required by state law). As explained below, Plaintiff has stated colorable state-law claims for violation of (1) an express warranty, Tenn. Code Ann. § 47-2-313, (2) an implied warranty of fitness for a particular purpose, Tenn. Code Ann. § 47-2-315, and (3) an implied warranty of merchantability, Tenn. Code Ann. § 47-2-314. Accordingly, Plaintiff's co-extensive MMWA breach of warranty claim may proceed for factual development. *Bearden*, 720 F. Supp. 2d at 938.

  1. <u>Express Warranty</u>

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tenn. Code Ann. § 47-2-313(1)(a). In addition, under Tenn. Code Ann. § 47-2-313(b), "[a]ny description of the goods which is made a part of the basis

5

of the bargain creates a warranty that the goods shall conform to the description." Tenn. Code Ann. § 47-2-313(b). "No magic words are necessary to create an express warranty. Rather, express warranties are 'dependent on the party's intention.'" *Barrette Outdoor Living, Inc. v. Vi-Chem Corp.*, No. 2:13-cv-289, 2015 WL 12547568, at *6 (E.D. Tenn. Aug. 31, 2015) (quoting *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970 (M.D. Tenn. 2002)). To plead a breach of subsection 313(1)(a), Plaintiff must allege that (1) Defendants made an affirmation of fact intending to induce Plaintiff to purchase the Subject Vehicle; (2) Plaintiff was, in fact, induced by Defendants' acts; and (3) the affirmation of fact was false regardless of Defendant's knowledge of the falsity or intention to create a warranty. *Jones v. WFM-Wo, Inc.*, 265 F. Supp. 3d 775, 781 (M.D. Tenn. 2017) (quoting *Smith v. TimberPro Inc.*, 2017 WL 943317, at *3 (Tenn. Ct. App. Mar. 9, 2017)). Under subsection 313(b), Plaintiff must allege that "[Defendants'] incorrect description of the [Subject Vehicle] induce[d] [Plaintiff] to purchase [the Subject Vehicle]." *Jones*, 265 F. Supp.3d at 781 (citing *H.B.H. Enterprises, Inc. v. Cates*, 1997 WL 76804, at *2 (Tenn. Ct. App. Feb. 25, 1997)).

The Amended Complaint alleges that Defendants intentionally made misrepresentations that induced Plaintiff's purchase of a damaged vehicle that did not conform to Defendants' description. Thus, at this preliminary stage, Plaintiff has stated a colorable claim for breach of express warranty under Tennessee law. *See, e.g., Jones*, 265 F. Supp. 3d at 781-82 (collecting cases and noting colorable breach of express warranty claims based on misrepresentations, including cases involving a pizza with nuts that "did not conform to the description," products sold as "natural" that contained artificial ingredients, a product sold as "100% pure" that contained a second ingredient, and a vehicle falsely described as new).

### 2. Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47-2-315. To plead a breach of this implied warranty, Plaintiff must allege that (1) Defendants had reason to know Plaintiff's purpose; (2) Defendants knew Plaintiff was relying on Defendants' skill or judgment to furnish a vehicle; and (3) the Subject Vehicle was not "fit for the particular purpose for which it was bought." *Scott v. Abernathy Motorcycle Sales, Inc.*, No. 118CV01077STAJAY, 2021 WL 1030230, at *7 (W.D. Tenn. Mar. 17, 2021) (quoting *Allen v. Am. Med. Sys., Inc.*, No. 24, 1989 WL 105626, at *11 (Tenn. Ct. App. Sept. 15, 1989)); *Barrette*, 2015 WL 12547568, at *9 (quoting *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010)); *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M200800065COAR3CV, 2009 WL 1910955, at *3 (Tenn. Ct. App. June 30, 2009).

The Amended Complaint alleges that Defendants knew Plaintiff's specific purpose when purchasing the vehicle (i.e., driving in Tennessee); Plaintiff relied on Defendants' judgment in selecting and purchasing a mechanically sound vehicle suitable for this purpose; Defendants misrepresented the quality and condition of the Subject Vehicle knowing that Plaintiff was relying on those misrepresentations; Plaintiff purchased the Subject Vehicle in reliance on those misrepresentations; and the Subject Vehicle was not fit for the purpose it was bought. Accordingly, Plaintiff has stated a colorable claim for breach of the implied warranty of fitness for a particular purpose.

### 3. Implied Warranty of Merchantability

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47-2-314(1). Goods are "merchantable" when, among other things, they "are fit for the ordinary purposes for which such goods are used." *Id*. § 47-2-314(2)(c). Thus, a claim for breach of the implied warranty of merchantability arises if a routine seller of goods fails to sell particular goods that are fit for the ordinary purposes for which such goods are generally used. *Scott*, 2021 WL 1030230, at *10; *AutoZone, Inc.*, 737 F. Supp. 2d at 948-49. To state a plausible claim for breach of this implied warranty, Plaintiff need only allege that "in a general sense and as understood by a layman, that 'something was wrong' with the product" – in other words, "that the goods did not measure up to the requirements of the warranty at the time they were delivered." *AutoZone, Inc.*, 737 F. Supp. 2d at 948-49 (quoting *Browder v. Pettigrew*, 541 S.W.2d 402, 406 (Tenn. 1976); *Dan Stern Homes*, 2009 WL 1910955, at *4).

Drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint plausibly alleges that the Subject Vehicle was not merchantable at the time of delivery. Specifically, the Amended Complaint alleges that Defendants are regular purveyors of used automobiles; Defendants knowingly sold Plaintiff a flood-damaged, "salvage" vehicle with defective transmission; and the vehicle was not fit for the ordinary purpose for which such vehicles are used (i.e., driving). Plaintiff has, therefore, stated a colorable claim for breach of the implied warranty of merchantability. *See Patton v. McHone*, 822 S.W.2d 608, 617 (Tenn. Ct. App. 1991) ("Whether a particular used car is merchantable—that is fit for the ordinary purpose for which cars are used—depends on the age, mileage, condition, and price of the car.").

**C. Tennessee Consumer Protection Act**

The Tennessee Consumer Protection Act ("TCPA") outlaws "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The TCPA creates a cause of action for damages available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)." Tenn. Code Ann. § 47-18-109(a)(1). Section 47-18-104(b) includes a long list of acts encompassed by the definition of "unfair or deceptive act or practice." Thus, in order to plead a claim under the TCPA, Plaintiff must plausibly allege that: (1) Defendants engaged in an unfair or deceptive act or practice declared unlawful by the TCPA, and (2) Defendants' conduct caused an ascertainable loss of money or property. *Young v. Black & Decker (U.S.), Inc.*, No. 3:20-cv-519, 2021 WL 1292528, at *1 (M.D. Tenn. Apr. 7, 2021) (quoting *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)); *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-cv-00599, 2021 WL 794878, at *4 (M.D. Tenn. Mar. 2, 2021) (quoting *Tucker*, 180 S.W.3d at 115).

Moreover, the TCPA "is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." *Amirazodi v. Capella Educ. Co.*, No. 3:21-cv-00074, 2021 WL 1946643, at *3 (M.D. Tenn. May 14, 2021) (quoting *Young*, 2021 WL 1292528, at *1); *Westgate Resorts*, 2021 WL 794878, at *4 (quoting *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992)); *McCollum v. Peters*, No. E201402082COAR3CV, 2015 WL 4485557, at *6-7 (Tenn. Ct. App. July 23, 2015) (citing *Signature Designs Grp., LLC v. Ramko*, No. M2011-01086-COA-R3-CV, 2012 WL 2519037, at *14 (Tenn. Ct. App. 2012)). Thus, the Tennessee courts broadly define a "deceptive" act or practice as any "one that causes or tends to

9

cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." *Amirazodi*, 2021 WL 1946643, at *3 (quoting *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809-10 (Tenn. Ct. App. 2012)). A TCPA plaintiff is not required to allege fraudulent or willful misrepresentations, *Borla Performance Indus., Inc. v. Univ. Tool & Eng'g, Inc.*, No. E201400192COAR3CV, 2015 WL 3381293, at *13 (Tenn. Ct. App. May 26, 2015) (citing *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12-13 (Tenn. Ct. App. 1992)), or a breach of contract. *Mini Sys. Inc. v. Alexander*, No. W201901871COAR3CV, 2020 WL 6892010, at *3 (Tenn. Ct. App. Nov. 24, 2020) (quoting *Hall v. Hamblen*, M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004)). And the TCPA expressly disclaims any disclaimer or limitation of liability "by contract, agreement, or otherwise." *Morris*, 824 S.W.3d at 539 (quoting Tenn. Code Ann. § 47-18-113).

The Amended Complaint does not clearly reference specific "unfair or deceptive" acts enumerated in Section 104(b). (*See* Doc. No. 9). However, this is not fatal to Plaintiff's TCPA claim at this juncture. *See, e.g., Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697, 699 (Tenn. Ct. App. 1988) (concluding, despite plaintiff's failure to invoke "any specific section" of the TCPA, that the complaint stated a claim for deceptive acts by alleging that the seller failed to disclose an automobile "had been involved in an accident which impaired its market value $1,500 to $2,000"). Drawing all inferences in favor of Plaintiff, the allegations of the Amended Complaint implicate multiple provisions of Section 104(b). Among other things, Section 47-18-104(b) deems unlawful:

> (7) Representing that goods . . . are of a particular standard, quality or grade, . . . if they are of another;
>
> (19) Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve.
>
> (21) Using statements or illustrations in any advertisement which create a false impression of the . . . quality . . . value . . . usability or origin of the goods . . . offered, or which may otherwise misrepresent the goods . . . in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods . . . to other goods or services.
>
> (23) Misrepresenting [in any advertisement] the former . . . quality . . . of any goods sold.

*Id.* §§ 47-18-104(b)(7), (19), (21), (23).

The Amended Complaint plausibly alleges that Defendants intentionally misrepresented that the Subject Vehicle was of a particular quality despite knowing otherwise, and thereby created a false impression of the quality, value, and usability of the Subject Vehicle to such an extent that Plaintiff would have purchased a different vehicle had he known the true facts. The Amended Complaint also alleges that Defendants misrepresented that the Subject Vehicle had not been severely damaged under prior ownership. Furthermore, the Amended Complaint alleges that Defendants misrepresented that the Subject Vehicle was sold with a thirty-day warranty giving Plaintiff the right to repair of "engine and transmission" problems. Finally, Plaintiff alleges that Defendants' unfair or deceptive acts caused an ascertainable loss of $9,000. For purposes of initial review, this is sufficient to state colorable claims for one or more violations of the TCPA. These claims may proceed for factual development and – if appropriate – further clarification by Plaintiff.[2]

---

[2] The Court's finding that Plaintiff states a colorable TCPA claim is not a conclusion regarding the wisdom or merits of pursuing that claim under any referenced provision of Section 104(b) or a suggestion that Plaintiff may not rely on a provision of Section 104(b) not discussed herein. Plaintiff remains the "master

11

**D. Fraud Claims**

Finally, Plaintiff brings overlapping causes of action that the Court liberally construes to assert claims of fraudulent inducement, fraud, fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment. (*See* Doc. No. 9). Although these claims are governed by state law, Plaintiff's pleading must satisfy the "particularity" requirement of Federal Rule of Civil Procedure 9(b). *Harding v. BMW of N. Am., LLC*, No. 3:20-cv-00061, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020) (quoting *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012)); *Bridgestone Ams., Inc. v. Int'l Bus. Mach. Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016). Under Rule 9(b), a plaintiff must "'allege the time, place, and content of the alleged misrepresentation . . . ; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809 (M.D. Tenn. 2020) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2008). However, as long as a plaintiff pleads "sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *BiotronX*, 465 F. Supp. 3d at 809 (citations omitted).

The Court finds that Plaintiff has adequately alleged the time, place, and content of a fraudulent scheme to market and sell defective used automobiles by describing interactions with Defendants and including specific examples of alleged misrepresentations. Moreover, Plaintiff has described Defendants' allegedly deceptive sales tactics and post-sale actions intended to prevent Plaintiff's discovery of the Subject Vehicle's true condition or delay those facts from being known

---

of his complaint," *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007), and thus he may, subject to all applicable rules, clarify the precise contours of this claim.

until after expiration of the warranty period. Finally, Plaintiff has alleged specific injury from the fraudulent scheme. Because the Amended Complaint includes sufficient detail "to allow [ ] [D]efendant[s] to prepare a responsive pleading," *BiotronX*, 465 F. Supp. 3d at 809, Plaintiff has satisfied Rule 9(b).

1. Intentional Misrepresentation

In Tennessee, fraud, intentional misrepresentation, and fraudulent misrepresentation comprise the same tort, which is typically referred to as intentional misrepresentation. *Amirazodi*, 2021 WL 1946643, at *4 (citing *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014); *Hodge v. Craig*, 382 S.W.3d 325, 342-43 (Tenn. 2012)); *Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 275 (M.D. Tenn. 2020). To state a claim for intentional misrepresentation, Plaintiff must plausibly allege: (1) Defendants made an intentional misrepresentation of a material fact; (2) Defendants made the representation "knowingly" without belief in its truth, or "recklessly" without regard to whether it was true or false; (3) Plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact. *Amirazodi*, 2021 WL 1946643, at *4 (citing *BiotronX,* 465 F. Supp. 3d at 809; *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006)); *Wischermann Partners, Inc. v. Nashville Hosp. Cap. LLC*, No. 3:17-cv-00849, 2021 WL 809683, at *8 (M.D. Tenn. Mar. 3, 2021). A future promise can support a claim for intentional misrepresentation – known as "promissory fraud" – if it is made without "the present intention to carry out the promise.'" *BiotronX*, 465 F. Supp. 3d at 809-10 (quoting *Power & Tel. Supply*, 447 F.3d at 931).

The Amended Complaint alleges that Defendants made misrepresentations to Plaintiff encompassing both existing facts (e.g., the history and condition of the Subject Vehicle) and

13

Case 3:21-cv-00955   Document 10   Filed 03/17/22   Page 13 of 19 PageID #: 235

promises to engage in future action (e.g., the thirty-day warranty). Plaintiff alleges that these misrepresentations and promises were material; false; known by Defendants to be untrue; made by Defendants as part of a scheme to sell damaged vehicles to unsuspecting purchasers; and made by Defendants without the intention to deliver what was represented or promised. The Amended Complaint also alleges that Plaintiff did not know Defendants' misrepresentations were false; relied on them in deciding to purchase the Subject Vehicle; and was quantifiably harmed by Defendants' actions. Plaintiff has therefore stated a colorable claim for intentional misrepresentation.

2. Fraudulent Inducement

The tort of fraudulent inducement to enter into a contract is "closely related" to intentional misrepresentation. *Loew v. Gulf Coast Dev., Inc.*, No. 01-A-019010CH00374, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991). The cause of action arises "when a person's willingness to enter into a contract is caused by another person's fraudulent misrepresentations with regard to a matter material to the contract." *Id*. To state a fraudulent inducement claim, Plaintiff must plausibly allege that Defendants (1) made a false statement concerning a fact material to the Subject Vehicle transaction; (2) with knowledge of the statement's falsity or utter disregard for its truth; (3) with the intent of inducing Plaintiff's reliance on the statement; (4) that Plaintiff reasonably relied on the statement, and (5) that this reliance resulted in an injury. *Thompson*, 773 F.3d at 752 (citing *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011)). As in an intentional misrepresentation action, fraudulent inducement claims may involve either false statements of past or present facts or false promises made without the present intent to perform. *Loew*, 1991 WL 220576, at *7 (citing *Fowler*, 575 S.W.2d at 499).

Plaintiff has also stated a colorable fraudulent inducement claim. The Amended Complaint plausibly alleges that Defendants knowingly made false statements to Plaintiff concerning material aspects of the Subject Vehicle transaction (e.g., vehicle history, condition, warranty); Defendants intended to induce Plaintiff to engage in the transaction in reliance on those misrepresentations; and Plaintiff executed the purchase agreement for the Subject Vehicle to his detriment in reliance on those false, material statements. Accordingly, this claim may proceed for factual development.

3. Negligent Misrepresentation

The tort of negligent misrepresentation concerns "business or professional persons who negligently supply false information for the guidance of others in their business transactions." *Hodge*, 382 S.W.2d at 345 (quoting *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 433 (Tenn. 1991)). To state a claim, Plaintiff must plausibly allege: (1) Defendants were acting in the course of business, profession, or employment, or in a transaction in which they had a pecuniary interest; (2) Defendants supplied faulty information meant to guide others in their business transactions; (3) Defendants failed to exercise reasonable care in obtaining or communicating the information; and (4) Plaintiff justifiably relied upon the information. *Thompson*, 773 F.3d at 751-52 (quoting *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997)); *Hodge*, 382 S.W.2d at 344.

The Amended Complaint alleges that Defendants, acting in the course of their ongoing used car sales business, deliberately supplied Plaintiff (and others) with faulty information meant to guide them to engage in business transactions (i.e., used car purchases). Plaintiff alleges that Defendants, at a minimum, did not exercise reasonable care when communicating faulty information to Plaintiff. Finally, the Amended Complaint alleges that Plaintiff justifiably relied on Defendants' faulty information and consummated Defendants' recommended consumer

transaction to his detriment. No more is required at this stage; Plaintiff's colorable negligent misrepresentation claim may proceed for factual development.

4. <u>Fraudulent Concealment</u>

In Tennessee, the "tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 395 (6th Cir. 2020) (quoting *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003)); *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998)). There are two lines of Tennessee cases regarding a party's duty to disclose information. *Bearden*, 720 F. Supp. 2d at 939. The first line arose from a Tennessee Supreme Court holding that the duty to disclose arises only in three "distinct" circumstances: (1) "where there is a previous definite fiduciary relation between the parties," (2) "where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other," and (3) "where the contract or transaction is intrinsically fiduciary and calls for perfect good faith." *Id*. (citing *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885)). A second line of cases, originating with *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947), "prescribes a broader duty to disclose." *Bearden*, 720 F. Supp. 2d at 939. Thereunder, "contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter." *Id*. (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349-50 (Tenn. Ct. App. 2009)); *see also Garrett v. Mazda Motors of Am.*, 844 S.W.2d 178, 181 (Tenn. Ct. App. 1992) ("[A] seller who induces a purchaser to buy an article of property by . . . concealing a material fact is liable for the damages that are the natural and proximate result of the fraud.").

16

In 2003, the Court of Appeals for the Sixth Circuit adopted the *Domestic Sewing* formulation in a dispute between parties to a gas station franchise. *Shah*, 338 F.3d at 571. In declining to apply *Simmons*, the court noted that "these cases have generally been limited to real estate purchases and used car sales." *Id*. at 572 n. 9 (citations omitted). As Judge Aleta A. Trauger of this Court has explained, since that time the Tennessee courts have reaffirmed the *Simmons* formulation, expanded on it, and applied it in a greater number of contexts. *Bearden*, 720 F. Supp. 2d at 940-41 (collecting cases). Judge Trauger concluded that: (a) the *Simmons* line of cases "clearly already applies to car sales," and (b) "[g]iven the[ ] developments in Tennessee law since the [*Shah*] decision [ ], and the fact that *Shah* was not a dispute between a consumer and a seller, . . . the *Simmons* line of cases applies to consumer transactions" generally. *Id*.

Because this case involves a used car sale, the Court concludes that threshold dismissal under the *Domestic Sewing* line of cases is not appropriate. *See id*. ("It is possible that . . . the defendant will be able to show that it nevertheless had no duty to disclose information . . . But the court will not dismiss the plaintiffs' fraudulent concealment claim simply because the parties were not in a fiduciary relationship."). Under *Simmons* and its progeny, in the absence of a special relationship, a seller must disclose material information about its product's condition in the following circumstances:

17

> (1) A seller must disclose enough information to prevent its statements from being misleading;
>
> (2) A seller must give accurate answers to a buyer's questions concerning a product's condition;
>
> (3) A seller must disclose any condition or defect that it knows or should know about that renders the product defective or dangerous; and
>
> (4) A seller must disclose basic, material information if it knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself.

*Patton*, 822 S.W.2d at 615-16 (citing *Simmons*, 185 Tenn. 282, 285-86, 206 S.W.2d 295, 296 (1947); RESTATEMENT (SECOND) OF TORTS § 551(2)(e) (1976)).[3]

The Amended Complaint alleges that Defendants had one or more duties to disclose material information concerning the Subject Vehicle's history, condition, quality, and warranty; Defendants were required to disclose such information to prevent other statements about the Subject Vehicle from being misleading; Defendants knew or should have known that the Subject Vehicle was defective and dangerous but intentionally failed to disclose that information (directly or in response to Plaintiff's questions); and Defendants possessed, and failed to disclose, material information about the Subject Vehicle that Plaintiff was otherwise unable to acquire (e.g., a "salvage" title indicating flood damage). Accordingly, Plaintiff plausibly alleges that Defendants breached a duty to disclose material facts affecting the essence of Plaintiff's contract to purchase the Subject Vehicle. *See, e.g., Garrett*, 844 S.W.2d at 181 (noting that "[a] failure to disclose

---

[3] In addition to these common law duties to disclose, the Amended Complaint asserts that Defendants had other duties to disclose specific information pursuant to Tennessee law, *see* Tenn. Code Ann. § 55-3-209(9) ("A seller of a passenger motor vehicle that becomes a flood vehicle shall, at or prior to the time of transfer of ownership, give the buyer a written notice that the vehicle is a flood vehicle"), and federal regulations, *see* C.F.R. § 455.2 (Federal Trade Commission rules concerning warranty information that must be displayed on "Buyer's Guide"). The Court need not reach these contentions on initial review.

18

material facts when one is under a duty to make disclosure amounts to fraud," and concluding that an automobile dealer who described a car prior to sale as lightly used and "babied" had a duty to disclose that the car had been stolen and driven 10,000 miles); *Patton*, 822 S.W.2d at 615 n. 11 (noting that the duty to disclose was implicated by an automobile dealer's statement that that a car was "new" without also telling the customer that the car had also been in an accident and repaired) (citing *Paty*, 756 S.W.2d at 699-700).

### IV.  CONCLUSION

For these reasons, the Court concludes that Plaintiff has stated the following colorable claims: (1) Magnuson-Moss Warranty Act, (2) breach of express warranty; (3) breach of implied warranty of fitness for a particular purpose; (4) breach of implied warranty of merchantability; (5) violation of TCPA § 47-18-104(b); (6) intentional misrepresentation; (7) fraudulent inducement; (8) negligent misrepresentation; and (9) fraudulent concealment. Plaintiff's Odometer Act claim will be dismissed. This case will be referred to the Magistrate Judge for further proceedings.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE