IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEVIN L. BROWN )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>WOODBURY AUTO GROUP LLC )<br>and KHATAB DABSHEE, )<br>    Defendants. ) | Civil Action No. 3:21-cv-00955<br>Judge Campbell / Frensley |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This matter is before the Court upon Defendants' "Motion to Dismiss Plaintiff's Second Amended Complaint as Moot." Docket No. 54. As grounds for their Motion, Defendants argue that: (1) Plaintiff's recission claim is moot because Plaintiff totaled the Subject Vehicle such that it no longer exists to rescind; (2) Plaintiff's claim for restitution is moot because Plaintiff received and cashed an insurance check in the amount of $10,657.75, and therefore he has already been made whole for the full amount he paid for the vehicle; (3) Plaintiff's claims for compensatory damages are moot because Plaintiff has already received an additional $1,907.75 in excess of his purchase price; and (4) there are no grounds to support Plaintiff's claim for punitive damages. *Id.* In support of their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law with Exhibits, including *inter alia*, the police report from Plaintiff's March 2023 accident totaling the Subject Vehicle; a copy of the cashed insurance check for the totaled vehicle in the amount of $10,657.75; the original CARFAX report for the Subject Vehicle; the original Experian report for the Subject Vehicle; the original SOLERA report for the Subject Vehicle; Plaintiff's criminal records from the Putnam County Criminal Court; and letters from Plaintiff to Defendants. Docket Nos. 55 – 55-7.

Plaintiff has filed a Response to Defendants' Motion. Docket No. 56. Plaintiff's Response neither addresses the arguments contained in Defendants' Motion nor challenges Defendants' Exhibits; instead, it simply reiterates his original claims and embeds a "Motion to Issue Jurisdictional Discovery and to Hold Defendants' Motion to Dismiss in Abeyance." *Id.*

Defendants have filed a Reply, noting that Plaintiff neither disputes that the Subject Vehicle was destroyed nor that he received and cashed an insurance check for $10,657.75 for the Subject Vehicle, which covered his full purchase price and gave him an additional $1,907.75 "in profits which means he suffered no damages but rather made profits." Docket Nos. 57-1; 65. Plaintiff likewise did not dispute the other Exhibits they submitted.

With regard to Plaintiff's embedded "Motion to Issue Jurisdictional Discovery and To Hold Defendants' Motion to Dismiss in Abeyance," Defendants argue that Plaintiff's "Motion" fails to specify or in any way discuss details regarding the evidence he wants to discover, where the evidence is, and/or what effect the evidence would have on the case or on the jurisdiction of the court. *Id.* Accordingly, and in light of the mootness of Plaintiff's claims, Defendants argue that Plaintiff's "Motion" should be denied. *Id.*[1]

For the reasons discussed below, the undersigned finds that Plaintiff's recission and restitution claims have become moot. The undersigned further finds that Plaintiff has failed to establish that he is entitled to either compensatory or punitive damages, and likewise has failed to establish that he is entitled to either declaratory or injunctive relief. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint as Moot (Docket No. 54) should be **GRANTED**, and this action should be **DISMISSED WITH**

---

[1] Defendants have also included in their Reply a "Motion to Permit Defendants' Memorandum of Law as Filed in (20) Pages instead of (25)." Docket No. 57-1; 65. That Motion is hereby **GRANTED** and the Court will consider Defendants' filed Response in its entirety.

PREJUDICE.

## II. BACKGROUND

Plaintiff, *pro se*, filed his Second Amended Complaint averring:

> I almost lost my life today. The saltwater damage had apparently eaten through the metal on the frame causing me to have a serious accident and get killed [*sic*] or kill someone else. As I was driving down I-40 near Baxter, suddenly the hood came up blinding me, so I hit the ditch. The frame had [*sic*] on the left side had corroded to the point of breaking causing me to have a serious life-threatening accident on I-40. Today, the Cumberland Body Shop here in Cookeville evaluated the vehicle and determined that it was "totaled", and the cost of repairs exceeds the value of the Subject Vehicle, the 2015 Nissan Altima, flooded Altima. Based on information and belief, the total value of the totaled salvage Altima was around or is around $1,500. The Altima was priced at $11,500. Outrageous profits. I would love to see their books."

Docket No. 53, ¶ 1.

The remainder of Plaintiff's Second Amended Complaint essentially reiterates the allegations of his First Amended Complaint, namely that, in selling him a flood damaged and salvaged 2015 Nissan Altima, Defendants violated his rights under the Magnuson-Moss Warranty Act; the Fraud Claims of Intentional Misrepresentation, Negligent Misrepresentation, Fraudulent Inducement, Fraudulent Concealment; the Tennessee Consumer Protection Act, the Motor Vehicle Information and Cost Savings Act, "Concealment", "Fraud or Misrepresentation", and "Fraud and Deceit." Docket No. 53; *see also,* Docket No. 9. Plaintiff seeks "declaratory, equitable, and/or injunctive relief," rescission, restitution in the amount of $9,000, compensatory damages "in an amount the Court deems just and proper," $50,000 in punitive damages, "reasonable out of pocket litigation expenses," and "such other and further relief as the Court deems just and proper under the circumstances." *Id.*

As part of his Second Amended Complaint, Plaintiff has filed the following Exhibits: a CARFAX report with recall messages; window stickers and CARFAX reports for a 2011 Honda

Pilot, 2019 Nissan Sentra, 2015 Honda Civic, 2016 Nissan Altima, 2017 Nissan Maxima; the Certificate of Title for the 2015 Nissan Altima; the Buyers Guide for the 2015 Nissan Altima; the Bill of Sale for the 2015 Nissan Altima; a document of "Competitive Prices"; and the preliminary estimate to repair the 2015 Nissan Altima after Plaintiff's March 2023 accident. Docket No. 53, Exhibits A-K.

### III. FACTUAL ALLEGATIONS AND EXHIBITS

#### A. Allegations of Plaintiff's Second Amended Complaint[2]

On October 22, 2021, Plaintiff and his elderly mother visited a used car lot operated by Defendant Woodbury Auto Group LLP. Docket No. 53. Defendant Dabshee directed their attention to a 2015 Nissan Altima ("Subject Vehicle") with a sticker price of $11,500; however, Defendant Dabshee was "eager to come down" when Plaintiff and his mother indicated that they were paying in cash. *Id.* Defendant Dabshee represented to Plaintiff that the Subject Vehicle had been thoroughly inspected; its vehicle history had been checked; and it was in excellent mechanical condition, had not been in any serious accident, and did not have any frame damage. *Id.*

Defendant Dabshee refused to provide Plaintiff with the CARFAX report concerning the vehicle's mechanical history, despite Plaintiff's mother asking for it, but confirmed that the vehicle was being sold with the 30-day "dealer warranty" for "engine and transmission" that was advertised in bold letters on the Buyer's Guide window sticker. *Id.*

Based on Defendant Dabshee's representations that the Subject Vehicle was "fit for the road" and covered by the warranty, Plaintiff agreed to purchase the car for $9,000 cash (rather than the $11,500 sticker price). *Id.* It was agreed that the tax, tag, and license fees were to be included

---

[2] Unless otherwise noted, the following allegations are taken from Plaintiff's Second Amended Complaint, filed on May 2, 2023. Docket No. 53.

in the $9,000, but Plaintiff and his mother ended up paying for the license and other documents themselves. *Id.*

After Plaintiff purchased the car, he drove home and looked up the vehicle history or the CARFAX, which indicated the vehicle was flood damaged. *Id.* Defendants claimed they had no knowledge of the prior vehicle damage and they offered to trade the Altima for "yet another 'flood damaged' car but refused to return [Plaintiff's] money." *Id.*

Leaving Defendants' lot, Plaintiff noticed a slight knock in the transmission but nothing really concerning. *Id.* Over the course of the next six weeks, the knocks from the transmission became so powerful and loud that the vehicle became unsafe to drive on the roads and highways of Tennessee. *Id.* "Additional defects may exist in the vehicle and such defects will be discovered upon detailed inspection of the vehicle, or through investigation and discovery." *Id.*

Defendants failed to provide the Subject Vehicle's title until after the 30-day warranty period expired. *Id.* Approximately 45 days after Plaintiff purchased the car, Defendant Dabshee notified Plaintiff that he could come pick up the title. *Id.* Upon seeing the title, Plaintiff discovered that the Subject Vehicle had been rendered "salvage" condition by "flood damage" in a hurricane-impacted area. *Id.*

Defendants failed to disclose during the sale that the Subject Vehicle had been recalled a total of 10 times and that the transmission was "about to fail" and "needed serious repair," and failed to provide "proper" title documents and disclosure statements. *Id.*

Plaintiff would not have purchased the Subject Vehicle "had [he] known the true condition and history." *Id.* Plaintiff further avers the Subject Vehicle's value has been impaired because it is "unsafe to drive on the roads…of Tennessee" due to the damaged transmission and, as a "salvage" vehicle, it is not "legally drivable" and cannot be registered for license plates or insured in

Tennessee. *Id.* Plaintiff and his mother have sustained damages in an amount of $9,000. *Id.*

B. **Plaintiff's Exhibits[3]**

As part of his Second Amended Complaint, Plaintiff has filed a CARFAX report with recall messages; window stickers and CARFAX reports for a 2011 Honda Pilot, 2019 Nissan Sentra, 2015 Honda Civic, 2016 Nissan Altima, 2017 Nissan Maxima; the Certificate of Title for the 2015 Nissan Altima; the Buyers Guide for the 2015 Nissan Altima; the Bill of Sale for the 2015 Nissan Altima; a document of "Competitive Prices"; and the preliminary estimate to repair the 2015 Nissan Altima after Plaintiff's March 2023 accident. Docket No. 53, Exhibits A-K.

C. **Defendants' Exhibits[4]**

As part of their Response, Defendants have filed the police report from Plaintiff's March 2023 accident totaling the Subject Vehicle; a copy of the cashed insurance check for the totaled Subject Vehicle in the amount of $10,657.75; the original CARFAX report for the Subject Vehicle; the original Experian report for the Subject Vehicle; the original SOLERA report for the Subject Vehicle; Plaintiff's criminal records from the Putnam County Criminal Court; and letters from Plaintiff to Defendants. Docket Nos. 55 – 55-7.

## IV. LAW AND ANALYSIS

A. **Motion to Dismiss**

i. **Generally**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to

---

[3] As noted, Plaintiff has submitted these Exhibits as part of his Second Amended Complaint. Docket No. 53.
[4] The following were filed as Exhibits to Defendants' Response. Docket No. 55 – 55-7.

sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.*

A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the current appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

### ii. Consideration of Exhibits

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)*, citing Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). If a court does consider

material outside the pleadings, the motion to dismiss must generally be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *Id., see also* Fed. R. Civ. P. 12(b). However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment. *Id., citing Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Notwithstanding, the ability of a court to consider supplementary documents is not without limitations. The Sixth Circuit has explained that "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir.2012) (citations, internal quotation marks, and alterations omitted). Put otherwise, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss; but a genuine dispute as to the legal sufficiency of said document requires the court to consider the issue under a motion for summary judgment standard. *Id., see also Ouwinga v. Benistar 419 Plan Servs.,* 694 F.3d 783, 796–797 (6th Cir.2012).

### B. Mootness

A case becomes moot, depriving federal courts of jurisdiction, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 726 (2013), *quoting Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam). "But a case 'becomes moot only when it is impossible for a court to grant any effectual

relief whatever to the prevailing party.'" *Chafin v. Chafin,* 133 S.Ct. 1017, 1023 (2013), *quoting Knox v. Serv. Emps. Int'l Union, Local 1000,* 132 S.Ct. 2277, 2287 (2012). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox,* 132 S.Ct. at 2287, *quoting Ellis v. Railway Clerks,* 466 U.S. 435, 442 (1984) (internal quotation marks and brackets omitted).

When a complaint seeks compensatory and punitive damages, the damages claim alone keeps the case alive. *See Deakins v. Monaghan,* 484 U.S. 193, 201–02 (1988) (concluding that the Court had jurisdiction to address the plaintiffs' claims for damages and attorney's fees even where their equitable claims were moot). Indeed, a claim for damages "remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523, 1531 (2013).

### C. Magnuson-Moss Warranty Act ("MMWA")

The Magnuson-Moss Warranty Act ("MMWA") creates a federal right of action for breaches of warranty arising from state substantive law. *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013). The MMWA does not provide an independent cause of action for state law claims, but rather, provides additional damages for breaches of warranty under state law. *Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 938 (M.D. Tenn. 2010). Thus, to recover under the MMWA, a plaintiff must first assert a viable state-law warranty claim. *Id.*

### D. Tennessee Warranty Claims

#### i. Express Warranty

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tenn. Code Ann. § 47-2-313(1)(a). In addition, "[a]ny

description of the goods which is made a part of the basis of the bargain creates a warranty that the goods shall conform to the description." Tenn. Code Ann. § 47-2-313(b). No specific words are necessary to create an express warranty; rather, express warranties are "dependent on the party's intention." *See Coffey v. Dowley Mfg., Inc.,* 187 F. Supp. 2d 958, 970 (M.D. Tenn. 2002).

To plead a breach of express warranty under subsection 313(a), a plaintiff must allege that: (1) the defendant made an affirmation of fact intending to induce the plaintiff to purchase the good; (2) the plaintiff was, in fact, induced by the defendant's acts; and (3) the affirmation of fact was false regardless of the defendant's knowledge of the falsity or intention to create a warranty. *Jones v. WFM-Wo., Inc.,* 265 F. Supp. 3d 775, 781 (M.D. Tenn. 2017). To plead a breach of express warranty under subsection 313(b), a plaintiff must allege that the defendant's incorrect description of the good induced the plaintiff to purchase the good. *Id.*

### ii. Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is … an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47-2-315.

To plead a breach of implied warranty of fitness for a particular purpose, a plaintiff must allege that: (1) the defendant had reason to know of the plaintiff's purpose; (2) the defendant knew the plaintiff was relying on his/her skill or judgment to decide on the good; (3) the good was not fit for the particular purpose for which it was bought. *See AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010).

### iii. Implied Warranty of Merchantability

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47-2-314(1). Goods are "merchantable" when, among other things, they "are fit for the ordinary purposes for which such goods are used." *Id.*; Tenn. Code Ann. § 47-2-314(2)(c). Thus, a claim for breach of the implied warranty of merchantability arises if a routine seller of goods fails to sell particular goods that are fit for the ordinary purposes for which such goods are generally used. *AutoZone, Inc.*, 737 F. Supp. 2d at 948-49.

To state a claim for breach of the implied warranty of merchantability, a plaintiff need only allege that "in a general sense and understood by a layman, that 'something was wrong' with the product" – in other words, "that the goods did not measure up to the requirements of the warranty at the time they were delivered." *Id., quoting Browder v. Pettigrew*, 541 S.W.2d 402, 406 (Tenn. 1976).

### E. Tennessee Consumer Protection Act ("TCPA")

The Tennessee Consumer Protection Act ("TCPA") outlaws "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The TCPA creates a cause of action for damages available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)." Tenn. Code Ann. 47-18-109(a)(1).

Section 47-18-104(b) includes a long list of acts encompassed by the definition of "unfair or deceptive act or practice." In order to plead a claim under the TCPA, a plaintiff must plausibly allege that: (1) defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA; and (2) defendant's conduct caused an ascertainable loss of money or property. *Tucker*

*v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

The TCPA is liberally construed to protect consumers and others from those who engage in deceptive acts or practices. *See Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992). Thus, Tennessee courts broadly define a "deceptive" act or practice as any "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809-10 (Tenn. Ct. App. 2012). The TCPA expressly disclaims any disclosure or limitation of liability "by contract, agreement, or otherwise." Tenn. Code Ann. § 47-18-113.

### F. Fraud and Deceit

#### i. Generally

Claims of fraud must satisfy the "particularity" requirement of Fed. R. Civ. P. 9(b). *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012). Under Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation…; the fraudulent intent of the defendants; and the injury resulting from the fraud." *BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809 (M.D. Tenn. 2020). As long as a plaintiff pleads "sufficient detail – in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* at 809.

#### ii. <u>Intentional Misrepresentation</u>

In Tennessee, fraud, intentional misrepresentation, and fraudulent misrepresentation comprise the same tort, which is typically referred to as intentional misrepresentation. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014).

To state a claim for intentional misrepresentation, a plaintiff must plausibly allege: (1)

defendant made an intentional misrepresentation of a material fact; (2) defendant made the representation "knowingly" without belief in its truth, or "recklessly" without regard to whether it was true or false; (3) the plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact. *BiotronX*, 465 F. Supp. 3d at 809. A future promise can support a claim for intentional misrepresentation – known as "promissory fraud" – if it is made without "the present intention to carry out the promise." *Id.* at 809-10.

### iii. Fraudulent Inducement

The tort of fraudulent inducement to enter into a contract is closely related to intentional misrepresentation and arises "when a person's willingness to enter into a contract is caused by another person's fraudulent misrepresentations with regard to a matter material to the contract." *Loew v. Gulf Coast Dev., Inc.,* No. 01-A-019010CH00374, 1991 WL 220576 at *7 (Tenn. Ct. App. Nov. 1, 1991).

To state a fraudulent inducement claim, a plaintiff must plausibly allege that defendant: (1) made a false statement concerning a fact material to the transaction; (2) with knowledge of the statement's falsity or utter disregard for its truth; (3) with the intent of inducing the plaintiff's reliance on the statement; (4) the plaintiff reasonably relied on the statement; and (5) this reliance resulted in injury. *Thompson*, 773 F.3d at 752. Fraudulent inducement claims may involve either false statements of past or present facts or false promises made without the present intent to perform. *Loew*, 1991 WL 220576, at *7.

### iv. Negligent Misrepresentation

The tort of "negligent misrepresentation" is the failure to use due care in obtaining and communicating information upon which a party may reasonably be expected to rely in conduct of his economic affairs. *United States v. Neustadt*, 366 U.S. 696 (1961). Negligent misrepresentation

concerns "business or professional persons who negligently supply false information for the guidance of others in their business transactions." *John Martin Co. v. Morse/Diesel, Inc.,* 819 S.W.2d 428, 433 (Tenn. 1991).

To state a claim, a plaintiff must plausibly allege (1) defendant was acting in the course of business, profession, or employment, or in a transaction in which they had a pecuniary interest; (2) defendant supplied faulty information meant to guide others in their business transactions; (3) defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied upon the information. *Thompson*, 773 F.3d at 751-52.

    **v.**    **Fraudulent Concealment**

The tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury. *EPAC Techs, Inc., v. HarperCollins Christian Publ'g, Inc.,* 810 F. App'x 389, 395 (6th Cir. 2020). There are two lines of Tennessee cases regarding a party's duty to disclose information: the first, arose from a Tennessee Supreme Court holding that the duty to disclose arises only in three distinct circumstances: (1) where there is a previous definite fiduciary relation between the parties; (2) where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other; and (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885). The second line of cases, originating with *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947), prescribes a broader duty to disclose. Thereunder, contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter. *Odom v. Oliver*, 310 S.W.3d 344, 349-50 (Tenn. Ct. App. 2009). Tennessee applies the *Simmons* line of cases to car sales specifically, and to consumer transactions generally. *Bearden*, 720 F. Supp. 2d

at 940-41.

### G. The Case at Bar

This matter is before the Court upon Defendants' "Motion to Dismiss Plaintiffs' Second Amended Complaint as Moot." Docket No. 54. As discussed above, both Plaintiff and Defendants have filed Exhibits to be considered by the Court. As further discussed above, a court may consider Exhibits without converting a Motion to Dismiss to a Motion for Summary Judgment when those Exhibits are: (1) attached to the complaint; (2) public records; (3) items appearing in the record of the case; or (4) attached to a defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein. *Gavitt*, 835 F.3d at 640, *citing Kreipke*, 807 F.3d at 774; *Bassett*, 528 F.3d at 430. In the case at Bar, Plaintiff filed his Exhibits as part of his Second Amended Complaint, and the undersigned will consider them.

With regard to Defendants Exhibits filed with the Motion to Dismiss now pending before the Court, Plaintiff, in his Complaint avers that the Subject Vehicle had been subject to 10 recalls and Plaintiff submitted an Exhibit purporting to show said recalls. Docket No. 53. Because Plaintiff referenced the recalls in his Complaint and they are central to his claims seeking compensatory and punitive damages, the undersigned will consider the original CARFAX report and the original Experian Report for the Subject Vehicle submitted by Defendant. Docket Nos. 55-3, 55-4.

Plaintiff, in his Complaint, further avers that he "almost lost [his] life" in a serious car accident due to the saltwater damage and corrosion resulting in the hood of the vehicle coming up and blinding him, such that he hit a ditch. Docket No. 53. Because Plaintiff referenced the car accident in his Complaint and the cause of the accident is central to the claims contained therein, the undersigned will consider the police report of the accident submitted by Defendant. Docket No. 55-1.

Plaintiff also references in his Complaint the Cumberland Body Shop's evaluation of the vehicle and determination that it was "totaled," and Plaintiff submitted as an Exhibit the preliminary repair estimate from the Cumberland Body Shop, which lists Tennessee Farmers Mutual Insurance Company as the insurance company handling the claim. Docket No. 53. Because Plaintiff referenced the car being "totaled" in his Complaint and submitted an Exhibit indicating Tennessee Farmers Mutual Insurance Company as the insurance company handling the claim, and because these are central to Plaintiff's recission and restitution claims, the undersigned will consider the cashed insurance check submitted by Defendant. Docket No. 55-2.

Beyond Defendants' Exhibits submitted with their Motion to Dismiss being related to issues referred to in the Complaint and being central to the claims contained therein, the undersigned also notes that Plaintiff, in his Response to the instant Motion, utterly failed to mention or in any way discuss or dispute the Exhibits submitted by Defendants. *See* Docket No. 56. Plaintiff had an opportunity to dispute the relevance, authenticity, validity, or enforceability of Defendants' Exhibits and failed to do so. Accordingly, there is no dispute regarding Defendants' Exhibits and the undersigned may consider them when evaluating Defendants' Motion to Dismiss. *See Mediacom Se. LLC,* 672 F.3d at 400; *Ouwinga,* 694 F.3d at 796–797.

Addressing first Plaintiff's claims for recission, the record establishes – via Plaintiff's averments, Plaintiff's submitted body shop estimate, and Defendant's submitted police report – that the Subject Vehicle was totaled in an accident in March 2023. *See* Docket Nos. 53; 55-1. Because the Subject Vehicle no longer exists, Plaintiff's claim for recission is no longer 'live' and the Court cannot grant the relief sought. Accordingly, Plaintiff's claim for recission is MOOT and should be dismissed.

Turning next to Plaintiff's claim for restitution, Plaintiff avers in his Second Amended

Complaint, filed May 2, 2023, that "Plaintiff and his elderly Mother have sustained damages in an amount of $9,000." Docket No. 53, ¶ 35. The record establishes, however, that on March 15, 2023, Plaintiff's insurance company, Tennessee Farmers Mutual Insurance Company, issued him a check in the amount of $10,657.75 to cover the totaled vehicle. Docket No. 55-2. The record further establishes that Plaintiff received and cashed that check. *Id.* Because Plaintiff has already received more than the purchase price of the Subject Vehicle, he has already been made whole. Thus, his claim for restitution is no longer 'live' and the Court cannot grant the relief sought. Accordingly, Plaintiff's claim for restitution is MOOT and should be dismissed.

With regard to Plaintiff's desired compensatory damages, the undersigned will discuss each of Plaintiff's claims in turn. Addressing first Plaintiff's Magnuson-Moss Warranty Act and tangential Tennessee Warranty claims, Plaintiff avers that he was sold a flood damaged, salvaged vehicle whose saltwater damage corroded the metal on the frame to the point of it breaking, resulting in the hood coming up and blinding him, causing him to hit the ditch, total the car, and almost lose his life, such that Defendants violated express and implied warranties, the police report indicates that the cause of the accident was Plaintiff driving under the influence of alcohol and illegal drugs (and not anything mechanical). *Compare* Docket No. 53 *with* Docket No. 55-1. The police report further indicates that Plaintiff did not hit a ditch, but rather, was driving straight and rear-ended a car that was stopped in traffic, and that there were no injuries, no airbag deployment, and no medical transport. *Id.* The police report also indicates that Plaintiff was arrested for DUI. *Id.*

Plaintiff has also averred that the vehicle's flood damaged and salvaged condition resulted in his inability to register or insure the Subject Vehicle, but the police report indicates that the Subject Vehicle was both registered and insured, and further indicates that the registration and

insurance were current. Docket No. 55-1. In light of the foregoing, other than his conclusory allegations, Plaintiff has failed to allege sufficient facts demonstrating that the Subject Vehicle was not fit for its ordinary purpose, and compensatory damages for these claims are not warranted.

Turning to the issue of compensatory damages for Plaintiff's fraud and deceit claims, including intentional and negligent misrepresentation, inducement, and concealment, and his Motor Vehicle Information and Cost Savings Act claim, Plaintiff avers that he would not have purchased the Subject Vehicle had he known its history or condition, or had he received a title certificate at the time of sale. Docket No. 53. While that may be true, Plaintiff has already been made whole via the insurance check. In fact, Plaintiff was not only made whole, but he received an additional $1,657.75. Plaintiff paid $9,000 for the Subject Vehicle and he acknowledges that is the amount he was damaged. The insurance check was issued in the amount of $10,657.75. Accordingly, Plaintiff has already received more than his damages and no further compensatory damages are warranted.

With regard to Plaintiff's compensatory damages claim under the Tennessee Consumer Protection Act, as discussed, the TCPA permits the recovery of damages to a person who suffers an ascertainable loss of money or property. Tenn. Code Ann. 47-18-109(a)(1). As has been established, Plaintiff has already been made whole; thus, he no longer has an ascertainable loss of money or property, and no further recovery is warranted.

As to the $50,000 in punitive damages Plaintiff seeks, Tenn. Code Ann. 29-39-104 provides: "Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulent, or recklessly." Simply put, Plaintiff has failed to do so. Plaintiff has proffered no evidence whatsoever to support his conclusory allegations that Defendants acted

maliciously, intentionally, fraudulent, or recklessly, and Plaintiff has failed to carry his clear and convincing burden of proof. Accordingly, there are no grounds to award the punitive damages Plaintiff seeks, and this relief should be denied.

Addressing the declaratory and injunctive relief Plaintiff seeks, Plaintiff has failed to provide specifics as to the declaration or injunction sought and the grounds therefor, and he has likewise failed to adduce any evidence whatsoever to establish either that he is entitled to a declaration, or that injunctive relief is warranted. As discussed above, Plaintiff has proffered nothing but conclusory allegations that Defendants acted maliciously, intentionally, fraudulent, or recklessly, and thus, there is nothing to declare. As also discussed above, the Subject Vehicle was totaled because of Plaintiff's driving under the influence of alcohol and drugs (not due to anything mechanical); the Subject Vehicle is no longer in Plaintiff's possession; and Plaintiff is no longer driving the vehicle; therefore, there is nothing to enjoin. In light of the foregoing, Plaintiff's claims for declaratory and injunctive relief should be denied.

## V. CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff's recission and restitution claims have become moot. The undersigned further finds that Plaintiff has failed to establish that he is entitled to either compensatory or punitive damages, and likewise has failed to establish that he is entitled to either declaratory or injunctive relief. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint as Moot (Docket No. 54) should be **GRANTED**, and this action should be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**